[S.F. No. 24462. Apr. 20, 1984.]

UNION CARBIDE CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
VILLMAR DENTAL LABS, INC., et al., Real Parties in Interest.

18

Counsel

Robert D. Raven, Samuel R. Miller, James P. Bennett, Penelope A. Preovolos, Morrison & Foerster, H. Blair White, Nathan P. Eimer, Sidley & Austin, Bruce Whitney, James M. Mabon, Jr., Henry P. Sailer, Covington & Burling, John J. McHugh, Chadwell, Kayser, Ruggles, McGee & Hastings, William G. Schops, Joyce L. Logan, Valentine A. Weber, Reuben & Proctor, Robert A. Lipstein, Miles W. Kirkpatrick, Morgan, Lewis & Bockius, J. A. McManus, John E. Burke, Robert C. Newman, Ross, Hardies, O'Keefe, Babcock & Parsons, Robert O'Connell, Bruce J. Phillips, James T. Dougherty, John F. McClure, Frank C. McAleer, Arnstein, Gluck, Weitzenfeld & Minow, Thomas L. Van Kirk and Buchanan, Ingersoll, Rodewald, Kyle & Buerger for Petitioners.

No appearance for Respondent.

Francis O. Scarpulla, Stephen V. Scarpulla, Scarpulla & Scarpulla, Norman H. Stone and Martin H. Eber for Real Parties in Interest.

George Deukmejian, Attorney General, Sanford N. Gruskin, Assistant Attorney General, Michael I. Spiegel, Peter K. Shack, Owen Lee Kwong, Michael R. Granen and Charles M. Kagay, Deputy Attorneys General, as Amici Curiae on behalf of Real Parties in Interest.

Opinion

**REYNOSO, J.**—Petitioners are named as defendants in a complaint seeking treble damages under the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) for an alleged price-fixing conspiracy, resulting in injury to plaintiffs as indirect purchasers. Petitioners request a writ of mandate that would require the respondent superior court to (1) order real parties in interest (hereafter plaintiffs) to join all persons in the chain of distribution between plaintiffs and petitioners as additional parties, on pain of a dismissal of the complaint, and (2) strike allegations of petitioners' fraudulent concealment of the conspiracy that, if proved, might enable plaintiffs to recover damages

for injuries incurred more than four years before commencement of the action but that are not necessary to recovery for injury incurred within the four-year period. We deny the writ.

## I

The complaint was filed January 23, 1981. It alleges: The three named plaintiffs are users of industrial gas which they purchased indirectly from petitioners through California distributors. Petitioners and others conspired to fix prices of the gas, causing plaintiffs to pay more for it than they would have paid in the absence of the conspiracy. The action is brought on behalf of a class composed of all California end-users who similarly purchased the gas indirectly from petitioners, and no plaintiff's individual damages exceed $10,000. Plaintiffs were unaware of the conspiracy and could not have uncovered it earlier by the exercise of due diligence because it was actively concealed by petitioners.

Petitioners demurred to the complaint, claiming a defect of parties (Code Civ. Proc., § 430.10, subd. (d); see § 430.30, subd. (a))[1] and moved to dismiss under section 389 for absence of indispensable parties. They also moved to strike the allegations of fraudulent concealment for uncertainty. The demurrer was overruled and the motions denied.[2] At petitioners' request, an alternative writ was issued for the purpose of reviewing those rulings.

The complaint was filed pursuant to section 16750, as amended in 1978. Before that amendment, subdivision (a) of the section provided that "[a]ny person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter [the Cartwright Act]" may bring an action for treble damages. (For Cartwright Act provisions forbidding price-fixing, see Bus. & Prof. Code, § 16720.) The 1978 amendment provided: "Such action may be brought by any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant." The statute enacting the amendment declared that it "does not constitute a change in, but is declaratory of, the existing law." (Stats. 1978, ch. 536, § 2, p. 1696.)

The amendment was enacted in response to the holding in *Illinois Brick Co. v. Illinois* (1977) 431 U.S. 720 [52 L.Ed.2d 707, 97 S.Ct. 2061], that

---

[1]All section references are to the Code of Civil Procedure unless otherwise indicated, except that citations of section 16750 refer to the Business and Professions Code.

[2]Certain allegations of the complaint not relevant to this writ proceeding were stricken on petitioners' motion, and plaintiffs filed an amended complaint that, for present purposes, may be treated as no different from the original complaint.

under section 4 of the Clayton Act (15 U.S.C. § 15) only direct purchasers may sue to recover treble damages for overcharges resulting from price-fixing prohibited by section 1 of the Sherman Act (15 U.S.C. § 1), and that indirect purchasers may not recover even if they show that the overcharges were passed on by the intervening distributors. ▮ California's 1978 amendment to section 16750 in effect incorporates into the Cartwright Act the view of the dissenting opinion in *Illinois Brick* (431 U.S. at p. 748 [52 L.Ed.2d at p. 726]) that indirect purchasers are persons "injured" by illegal overcharges passed on to them in the chain of distribution. (See Smith, *The California Legislature Steers the Antitrust Cart Right Off the Illinois Brick Road* (1979) 11 Pacific L.J. 121. For responses by other states to the *Illinois Brick* decision, see Gisser, *Indirect Purchaser Suits Under State Antitrust Laws: A Detour Around the Illinois Brick Wall* (1981) 34 Stan.L.Rev. 203.)

## II

Petitioners contend that section 389 requires the joinder as parties (subd. (a)), or the naming in the complaint with reasons for nonjoinder (subd. (b)), of all persons in the chain of distribution of industrial gas from petitioners to plaintiffs, because the absence of such persons from the action would subject petitioners "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" (§ 389, subd. (a)(2)(ii)). Of the persons whose joinder is sought, petitioners distinguish between those who (1) purchased the gas directly from petitioners and (2) purchased it indirectly from petitioners, regardless of whether the ensuing resales to plaintiffs were direct or indirect. For convenience, we refer to those two categories as "direct purchasers" and "intermediate purchasers."

As to direct purchasers, petitioners call our attention to a class action in the United States District Court for the Northern District of Illinois (In re Industrial Gas Antitrust Litigation, No. 80 C 3479), brought by residents of states other than California, who allege that they purchased industrial gas directly from petitioners and were injured by essentially the same price-fixing activities as those alleged in the complaint now before us. On October 24, 1983, the federal court authorized the suit to proceed as a class action on behalf of essentially all those in the United States who purchased gas (directly) from petitioners between July 1, 1974, and June 30, 1980. Petitioners argue that the federal suit exposes them to a substantial risk of multiple liability, i.e., liability to direct purchasers under the Sherman and Clayton Acts for damages based on the same alleged overcharges for which plaintiffs in the present action seek damages under the Cartwright Act as indirect purchasers and consumers.

As to intermediate purchasers who bought indirectly from petitioners and resold directly or indirectly to plaintiffs, petitioners contend that their ab-

sence from the present suit would create a substantial risk of multiple liability because the intermediate purchasers might independently sue petitioners under the Cartwright Act, contending that they absorbed, rather than passing on to the present plaintiffs, all or part of the overcharges for which plaintiffs now seek damages.

■ There are reasons to be cautious in requiring joinder, under subdivision (a)(2)(ii) of section 389, at the very outset of this Cartwright Act action. The subdivision specifies that the risk of multiple liability must be "substantial." Courts construing identical language in rule 19 of the Federal Rules of Civil Procedure (28 U.S.C.), from which the present version of section 389 was derived in 1971 (see *Conrad* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 237, 241 [120 Cal.Rptr. 803]), correctly point out that a "substantial risk" means more than a theoretical possibility of the absent party's asserting a claim that would result in multiple liability. The risk must be substantial as a practical matter. (*A. J. Kellos Const. Co., Inc.* v. *Balboa Ins. Co.* (S.D.Ga. 1980) 495 F.Supp. 408, 414; *Virginia Electric and Power Co.* v. *Bunker Ramo Corp.* (E.D.Va. 1973) 61 F.R.D. 366, 368-369; *F. T. C.* v. *Manager, Retail Credit Co., Miami Branch Office* (D.D.C. 1973) 357 F.Supp. 347, 354, revd. on other grounds (D.C. Cir. 1975) 515 F.2d 988.)

■ Moreover, in the context of an indirect-purchaser suit under the Cartwright Act, we must take care to avoid an application of section 389 that would thwart the legislative intent, expressed in the 1978 amendment to section 16750, subdivision (a), to retain the availability of indirect-purchaser suits as a viable and effective means of enforcing California's antitrust laws. In precluding such suits under the Clayton Act, the United States Supreme Court expressed apprehension that "allowing indirect purchasers to recover using pass-on theories, even under the optimistic assumption that joinder of potential plaintiffs will deal satisfactorily with problems of multiple litigation and liability, would transform treble-damages actions into massive multiparty litigations involving many levels of distribution and including large classes of ultimate consumers remote from the defendant." (*Illinois Brick Co.* v. *Illinois, supra,* 431 U.S. 720, 740 [52 L.Ed.2d 707, 721].) The dissenting opinion, however, concluded that "the hypothetical possibility that a few defendants might be subjected to the danger of multiple liability does not, . . . justify erecting a bar against all recoveries by indirect purchasers without regard to whether the particular case presents a significant danger of double recovery." (*Id.,* at p. 761 [52 L.Ed.2d at p. 734].) The dissent declared that the majority's decision "regrettably weakens the effectiveness of the private treble-damages action as a deterrent to antitrust violations by, in most cases, precluding consumers from recovering for antitrust injuries." (*Id.,* at p. 764 [52 L.Ed.2d at p. 736].) The 1978

amendment to section 16750, subdivision (a), implies legislative endorsement of those dissenting views, as applied to the Cartwright Act, and a mandate to avoid unnecessary procedural barriers to indirect purchasers' prosecution of California antitrust suits.

■ The fact that petitioners have raised their objections to nonjoinder of parties by demurrer (§§ 430.10, subd. (d), 430.30, subd. (a)) coupled with a motion to dismiss (§ 389) does not necessarily require that the trial court make an immediate determination of what parties, if any, must ultimately be joined. The California Law Revision Commission comment to section 389 quotes these pertinent observations from the Advisory Committee's note on federal rule 19: "A person may be added as a party at any stage of the action on motion or on the court's initiative . . .; and a motion to dismiss, on the ground that a person has not been joined and justice requires that the action should not proceed in his absence, may be made as late as the trial on the merits . . . . However, when the moving party is seeking dismissal in order to protect himself against a later suit by the absent person (subd. (a)(2)(ii)), and is not seeking vicariously to protect the absent person against a prejudicial judgment (subd. (a)(2)(i)), his undue delay in making the motion can properly be counted against him as a reason for denying the motion. A joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time. Thus the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced. . . ."

■ By their demurrer and motion to dismiss, petitioners raise their joinder claim "at the pleading stage," basing it wholly upon plaintiffs' complaint, the complaint in the Illinois federal case, and the proceedings in that case regarding certification of the plaintiff class. As we now explain, those papers do not demonstrate a substantial risk of multiple liability sufficient to require that additional parties be joined in the complaint (or named therein with sufficient reasons for nonjoinder) as a prerequisite to petitioners' being required to answer the complaint in order to avoid default.

We consider first petitioners' contention that joinder of direct purchasers who were in the chain of distribution to plaintiffs is required by the pendency of the Illinois federal class action, in which recovery is sought for damages based on overcharges paid by those direct purchasers regardless of whether the overcharges were passed on. Petitioners are not entitled to joinder of additional parties on account of a substantial risk of multiple liability (§ 389, subd. (a)(2)(ii)) simply because petitioners may be held

liable in a federal suit under a federal statute to a person or class wholly different from the person or class to whom they are sought to be held liable in a California action under a California statute for the same tortious conduct. Federal law, interpreted in *Illinois Brick, supra,* 431 U.S. 720, precludes recovery by indirect purchasers and allows recovery by the direct purchaser regardless of whether the overcharge was passed on, whereas the terms of section 16750, subdivision (a), allow recovery by the indirect purchaser regardless of whether the direct purchaser in the plaintiff's chain of distribution has asserted a federal claim for damages from the overcharge. Questions of whether overcharges were passed on, essential to the indirect purchaser's California claim, are irrelevant to, and thus not subject to inconsistent determination in, a suit on the direct purchaser's federal claim. Thus, federal actions such as the one in Illinois do not give rise to a "substantial risk" of multiple liability under section 389, subdivision (a)(2)(ii).

Petitioners also seek joinder of intermediate purchasers who purchased the gas *indirectly* from petitioners and sold it directly or indirectly to plaintiffs as end users, or consumers. Petitioners argue (1) that an intermediate purchaser could sue separately under the Cartwright Act for all or part of the overcharges claimed by the present plaintiffs, asserting that those overcharges were absorbed rather than being passed on, and (2) that the separate suit could result in petitioners' being held liable to both the intermediate purchaser and the plaintiff end users under the same statute for the same overcharges. On the record before us, however, the risk of any such exposure to multiple liability is not "substantial" as required by section 389, subdivision (a)(2)(ii).

In the first place, the complaint does not state that there were in fact any intermediate purchasers in plaintiffs' chain of distribution; it is neither alleged nor denied that the distributors who bought the gas directly from petitioners sold indirectly, rather than directly, to plaintiffs. The complaint alleges that plaintiffs were "indirect-purchaser, end-user/consumers of substantial amounts of industrial gas manufactured by one or more of the defendants [petitioners]" ([¶] 8), that "[p]urchasers of industrial gas from defendants [petitioners] include independent distributors, who in turn re-sell industrial gas to users" ([¶] 24), and that "defendants [petitioners] sold substantial quantities of industrial gas to distributors in the State of California who then re-sold such industrial gas to end-user/consumers such as the plaintiffs" ([¶] 25). Thus, on the face of the complaint, the only persons in the chain of distribution between plaintiffs and petitioners may have been direct purchasers who are members of the plaintiff class in the Illinois federal action and need not now be joined for the reasons already stated.

Moreover, the fact of purchasers intermediate between plaintiffs and direct purchasers in the chain of distribution, even if assumed, would not

establish a substantial risk of multiple liability. There is no showing of any actual assertion of a Cartwright Act claim on behalf of any such intermediate purchaser. We turn again to the views expressed by the *Illinois Brick* dissenting opinion that seem to have met with the California Legislature's approval when it amended section 16750, subdivision (a), in 1978. After pointing out the possibility of coordinating and consolidating pending federal court actions brought by different purchasers, the opinion observes: "True, there is a greater hypothetical danger of multiple recovery where suits are independently instituted after an earlier suit based on the same violation has proceeded to judgment. But even here the likelihood that defendants will be subjected to multiple liability is, as a practical matter, remote. The extended nature of antitrust actions, often involving years of discovery, combines with the short four-year statute of limitations to make it impractical for potential plaintiffs to sit on their rights until after entry of judgment in the earlier suit." (431 U.S. at pp. 763-764, fn. omitted [52 L.Ed.2d at p. 736].)

We do not foreclose the possibility that through discovery or other means petitioners may be able later to make a showing of substantial risk of multiple liability that would entitle them to a joinder order. Nor do we have occasion now to consider questions of whether or how potential plaintiffs should be represented if the present suit goes forward as a class action. (See § 389, subd. (d) ["Nothing in this section affects the law applicable to class actions"].) We simply reject petitioners' contention that on the present record they are entitled to joinder under section 389, subdivision (a)(2)(ii).[3]

## III

Finally, petitioners contend that the trial court should have granted its motion to strike the following allegations of the complaint for uncertainty: "CONCEALMENT [¶] 22. At all times relevant hereto, plaintiffs and the members of the class had no knowledge of the combination and conspiracy alleged herein, or of any facts which might have led to the discovery thereof. Plaintiffs and the members of the class they represent could not have uncovered the conspiracy at an earlier date by the exercise of due diligence, inasmuch as the unlawful conspiracy was actively concealed by the defendants through the adoption of elaborate schemes, including their resort to secrecy to avoid detection."

We have concluded that petitioners' contention should be rejected for the reasons stated in the following portion of the opinion prepared in this case by Justice Barry-Deal for the Court of Appeal:

---

[3]The dissenting opinion implicates substantive questions yet to be resolved. Petitioners do not contend, in this proceeding, that the 1978 amendment poses impermissible conflict with federal law, and we express no opinion on that issue.

"Business and Professions Code section 16750.1 provides that any civil action to enforce state antitrust laws 'shall be commenced within four years after the cause of action accrued.' In an apparent attempt to recover maximum damages, [plaintiffs] have alleged in their complaint that the offenses began at a 'date unknown' and that fraudulent concealment prevented plaintiffs from learning about the unlawful conduct. Petitioners object that the fraudulent concealment allegations quoted earlier in this opinion are not specific and factual.

"Petitioners argue that [plaintiffs] are required to plead: (1) when the facts giving rise to their claims were discovered; (2) what facts were discovered that led to the initiation of the claim and under what circumstances such facts were discovered; (3) that neither plaintiffs nor any of the putative class members had actual or presumptive knowledge of facts sufficient to put them under a duty to inquire; (4) that plaintiffs and putative class members are not at fault for failing to discover the facts underlying their cause of action sooner; and (5) that the failure to discover such facts was attributable to affirmative acts of fraudulent concealment perpetrated by defendants.

■ "Petitioners cite *Kimball* v. *Pacific Gas & Electric Co.* (1934) 220 Cal. 203, 215 [30 P.2d 39], *Baker* v. *Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321 [114 Cal.Rptr. 171, 91 A.L.R.3d 981], and other authority for the proposition that when the plaintiff seeks to avoid the statute of limitations by showing fraudulent concealment of the cause of action, the plaintiff must plead with particularity the facts showing fraudulent concealment. Petitioners accurately interpret those authorities. However, we find them distinguishable.

■ "The principle applied by those authorities is the well-recognized proposition that if on the face of the complaint the action appears barred by the statute of limitations, plaintiff has an obligation to anticipate the defense and plead facts to negative the bar. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 313, 779, pp. 1983, 2395.) ■ Here, however, nothing appearing on the face of the complaint suggests that the action is barred by the statute of limitations. The complaint alleges that the offenses began at a time unknown and continued up to the date of the filing of the complaint. Thus, the filing of the action was not barred by the statute of limitations. At most, plaintiffs will be limited to recovering damages for actions occurring within the four years preceding the complaint.

"Because the complaint does not reveal on its face that it is barred by the statute of limitations, real parties were not required to plead fraudulent concealment as an excuse for late filing. Thus, the fraudulent concealment

allegation is mere surplusage, and the trial court was not required to sustain a demurrer or motion to strike directed toward it.[6]"

The Court of Appeal's footnote 6 states:

"Petitioners contend that the requirement of particularized pleading in anticipation of the statute of limitations should be enforced here because otherwise real parties will be permitted to seek discovery concerning injuries 'stretching back through the endless corridors of time, . . .' However, it is only through this discovery that [plaintiffs] can uncover the beginning of the alleged conspiracy which they assert has been concealed by petitioners. The situation differs markedly from one in which the complaint alleges an open or public injurious act and that there has been concealment from the plaintiff of the defendant's involvement or of the as-yet-unrealized injurious consequences of the act. By its nature, a conspiracy to fix prices in violation of antitrust law is a secret act whose effects are public. Only through discovery or chance disclosure can an antitrust plaintiff learn about the actions leading to the observable effects."

The petition for a peremptory writ of mandate is denied, and the alternative writ is discharged.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., and Grodin, J., concurred.

**RICHARDSON, J.**\*—I respectfully dissent, believing that a writ should issue. In my view, several rules enunciated by the United States Supreme Court in *Hanover Shoe* v. *United Shoe Mach.* (1968) 392 U.S. 481 [20 L.Ed.2d 1231, 88 S.Ct. 2224] and *Illinois Brick Co.* v. *Illinois* (1977) 431 U.S. 720 [52 L.Ed.2d 707, 97 S.Ct. 2061], considered in conjunction with the Legislature's 1978 amendment to section 16750 of the Business and Professions Code, make appropriate a joinder of others within the chain of distribution, pursuant to Code of Civil Procedure section 389, subdivision (a).

In *Hanover Shoe* the high court interpreted section 4 of the Clayton Act (15 U.S.C. § 15) which provides that any person "who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained . . . ." (Cf. Bus. & Prof. Code, § 16750, subd. (a).) The *Hanover Shoe* defendant asserted that it should be permitted to show that any illegal overcharge it may have imposed on its purchasers was, in turn,

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

"passed on" by the plaintiff purchaser to the latter's customers with no net loss to plaintiff. The high court rejected the "pass on" defense, reasoning: "We are not impressed with the argument that sound laws of economics require recognizing this defense. A wide range of factors influence a company's pricing policies. Normally the impact of a single change in the relevant conditions cannot be measured after the fact; indeed a businessman may be unable to state whether, had one fact been different (a single supply less expensive, general economic conditions more buoyant, or the labor market tighter, for example), he would have chosen a different price. Equally difficult to determine, in the real economic world rather than an economist's hypothetical model, is what effect a change in a company's price will have on its total sales. Finally, costs per unit for a different volume of total sales are hard to estimate . . . . Treble-damage actions would often require additional long and complicated proceedings involving massive evidence and complicated theories." (392 U.S. at pp. 492-493 [20 L.Ed.2d at p. 1241].)

Subsequently, in *Illinois Brick,* the Supreme Court examined the application of the "pass on" concept when used as a *plaintiff's* device, rejecting the proposal that indirect purchasers could demonstrate that damages had been "passed on" to them. Referring to the Clayton Act, the high court said: "Permitting the use of pass-on theories under § 4 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge—from direct purchasers to middlemen to ultimate consumers. However appealing this attempt to allocate the overcharge might seem in theory, it would add whole new dimensions of complexity to treble-damages suits and seriously undermine their effectiveness." (431 U.S. at p. 737 [52 L.Ed.2d at p. 719].)

In the year after *Illinois Brick* the Legislature amended the California antitrust law by the addition of a clause in section 16750, subdivision (a), of the Business and Professions Code to provide that antitrust actions "may be brought by any person who is injured in his business or property by reason of anything forbidden or declared unlawful in this chapter, *regardless of whether such injured person dealt directly or indirectly with the defendant.*" (Italics added.) Section 2 of the statute provides additionally that "The amendment of this section . . . does not constitute a change in, but is declaratory of, the existing law." (Stats. 1978, ch. 536, § 2 at p. 1696.) Thus, while the federal rule, solidly and clearly established by the United States Supreme Court, restricts antitrust enforcement to the direct purchaser, the Legislature conferred an express remedy on those who are injured by antitrust action whether *or not* they dealt directly with defendant. Plaintiffs sue under the authority of the state provision.

Nonetheless, as we stressed in *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 925 [130 Cal.Rptr. 1, 549 P.2d 833], "A long line of California cases has concluded that the Cartwright Act is patterned after the Sherman Act and both statutes have their roots in the common law. Consequently, federal cases interpreting the Sherman Act are applicable to problems arising under the Cartwright Act. [Citations.]" (See also *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 315 [70 Cal.Rptr. 849, 444 P.2d 481].) The Legislature's declaration in section 2 of the amendment demonstrates a general intent to preserve this approach.

There is little applicable precedent governing the interplay of federal and state law on the subject. Several congressional proposals to overrule *Illinois Brick* have been unsuccessful. Six other states by statute have adopted a rule permitting, as does California, actions by indirect purchasers under state antitrust provisions (Alabama, Ala. Code, § 6-5-60(a) (1975); Hawaii, Hawaii Rev. Stat., § 480-14(c) (amended 1980); Illinois, Ill. Ann. Stat., ch. 38, § 60-7(2) (amended 1979); Mississippi, Miss. Code Ann., § 75-21-9 (1973); New Mexico, N.M. Stat. Ann., § 57-1-3(A) (amended 1979); and Wisconsin, Wis. Stat. Ann., § 133.18(1) (amended 1980)). These have yet to be judicially construed.

A critical factor in resolving the issue before us is the fact that defendants here are also defendants in a United States District Court action presently pending in the Eastern Division of the Northern District of Illinois (In re Industrial Gas Antitrust Litigation, Master File No. 80 C 3479). Based upon plaintiffs' demonstration in the district court action that a common method of proof of damages could be used for all class members on November 3, 1983, the district judge recertified the class of direct purchasers to include: "All persons, firms, and corporations in the United States that purchased industrial gas from any defendant [including their respective subsidiaries or affiliates] at any time during the period of July 1, 1974, to and including June 30, 1980, but excluding (a) any defendants, or other industrial gas manufacturers and their subsidiaries and excluding (b) all on-site and pipeline purchasers." All direct purchasers at the top of the chain of distribution are included in the class and, as such, if they prevail under federal law are entitled to treble damages for any overcharges by defendants.

In my view, in order to afford complete relief the direct and indirect purchasers in the chain of distribution to plaintiff must be joined as parties. Joinder is appropriate if there are persons not parties to the action in whose "absence complete relief cannot be accorded among those already parties," or who claim an interest in the subject matter of the action and whose absence may impair their ability to protect that interest or subject any of

those already parties "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." (Code Civ. Proc., § 389, subd. (a).) The two bases for my conclusion are (1) the strong probability that unless joinder is effected defendants may be subject to duplicative recovery of damages by different classes of plaintiffs and (2) plaintiffs may encounter significant problems in allocating the available "common fund" composed of trebled overcharges in which other parties may claim an interest. While my colleagues consider the risk speculative at this time, I regard the danger as real and substantial.

The first problem is the potential for duplicative damages against defendants. Direct purchasers under *Illinois Brick* may recover treble damages for overcharges paid by them even though the overcharges were "passed on" to others and regardless of any proven injury. In addition, under the Legislature's amendment to Business and Professions Code section 16750, indirect and end-user purchasers may also sue in order to show that the overcharges were passed on to them to their actual detriment, claiming as damages treble the amount of the "passed-on" overcharge. Thus, both federal direct purchaser plaintiffs and state indirect purchaser plaintiffs may recover based on the same overcharge. This potential arithmetic expansion is further complicated by the possibility of further damage awards for others in the chain of distribution. Despite the rather cavalier approach of my colleagues, the risk here is neither speculative nor clearly permissible. In the present case if the direct purchasers prevail in their federal action a plaintiff's recovery could impose upon defendants a recovery of *six* times the amount of any overcharge proved.

The *Illinois Brick* court expressly found such risk of duplicative recoveries wholly unacceptable. (431 U.S. at pp. 730-731, and fn. 11 [52 L.Ed.2d at pp. 715-716].) The high court, stating "we are unwilling to 'open the door to duplicative recoveries' under § 4" (p. 731 [52 L.Ed.2d at p. 716]), was entirely consistent with its earlier decision in *Hawaii* v. *Standard Oil Co.* (1972) 405 U.S. 251 [31 L.Ed.2d 184, 92 S.Ct. 885], in which it held that section 4 of the Clayton Act did not authorize a state to sue as *parens patriae* for harm done to its economy allegedly caused by an antitrust violation. The court reasoned that, "A large and ultimately indeterminable part of the injury to the 'general economy' . . . is no more than a reflection of injuries to the 'business or property' of consumers, for which they may recover themselves under § 4. Even the most lengthy and expensive trial could not . . . cope with the problems of double recovery inherent in allowing damages for harm both to the economic interests of individuals and for the quasi-sovereign interests of the State." (*Id.*, at p. 264 [31 L.Ed.2d at p. 193]; see Comment, *Parens Patriae Actions on Behalf of*

*Indirect Purchasers: Do They Survive Illinois Brick?* (1982) 34 Hastings L.J. 179 [arguing that they do].)

The holdings of lower federal and state courts following *Illinois Brick* have demonstrated the problem. Thus, in *Alton Box Bd. Co.* v. *Esprit de Corp.* (9th Cir. 1982) 682 F.2d 1267, the Ninth Circuit sustained the refusal by the district court, on procedural grounds, to enjoin a state court action by indirect purchasers. Finding no independent basis for federal jurisdiction the *Alton* court held that an injunction would be procedurally inappropriate. (See Anti-Injunction Act, 28 U.S.C. § 2283.) In dicta, however, the court viewed with favor the defendant manufacturer's argument that the Cartwright Act proceeding and an ongoing federal action involved claims to the same "common fund" which therefore might result in " 'duplicative recoveries' condemned by the Supreme Court." (*Id.,* at p. 1272.) One New York court denied recovery to indirect purchasers in a state action reasoning that "If the direct purchasers class in the Federal Court recover, allowing the putative class proposal by the plaintiffs here, to also sue would subject defendants for a second time to liability for damages." (*Russo & Dubin* v. *Allied Maint.* (1978) 95 Misc.2d 344, 348 [407 N.Y.Supp.2d 617].) Finally, another federal court in construing South Carolina's antitrust law limited the application of the state statute to intrastate commerce, and dismissed the indirect purchaser plaintiff's claims on the ground that they were interstate in character. It reasoned that, "Failure to apply *Illinois Brick* in this action would create the same problems the Supreme Court sought to avoid when it rendered that decision. . . . [including] the 'serious risk of multiple liability for defendants' . . . ." (*In re Wiring Device Antitrust Litigation* (E.D.N.Y. 1980) 498 F.Supp. 79, 87.) Thus, all the courts previously considering this problem have indicated that they believe risks such as the one involved here are not acceptable.

In attempting to accommodate the federal ιᴜᴌᴇ limiting treble damages to one action, some commentators have argued that the rule is not binding on state legislatures which may adopt a policy of compensation in preference to deterrence. (See Note, *State Indirect Purchaser Statutes: The Preemptive Power of Illinois Brick* (1982) 62 B.U.L.Rev. 1241, 1266-1268, 1270-1271; Note, *Indirect Purchaser Suits Under State Antitrust Laws: A Detour Around the Illinois Brick Wall* (1981) 34 Stan. L.Rev. 203, 208-211, 218-220 [recommending a legislative solution to the unacceptable problems of potential duplicative liability].) However, we are not asked, either by pleading or argument, to determine at this time whether the effect of *Illinois Brick* is to preempt those state laws which may result in duplicative liability. Nonetheless, the Legislature has expressly said that the *substantial risk* of such multiple liability is a basis for joinder. (Code Civ. Proc., § 389, subd. (a).) While deference should be afforded to state antitrust statutes (see *Exxon*

*Corp.* v. *Governor of Maryland* (1978) 437 U.S. 117, 128, 130-132 [57 L.Ed.2d 91, 101, 102-104, 98 S.Ct. 2207]; Note, *State Indirect Purchaser Statutes: The Preemptive Power of Illinois Brick, supra,* 62 B.U.L.Rev. at pp. 1252-1253, and fn. 76), I cannot accept plaintiffs' argument that there is no substantial potential for duplicative liability or the majority's conclusion made without citation or analysis that in any event such duplication would be permissible.

In fact, plaintiffs rather than claiming a right to duplicative recovery, instead attempt to suggest methods by which the problems of such recovery could be ameliorated. Each of the remedies suggested by plaintiffs raises substantial difficulties. It may be difficult for defendants to interplead or otherwise gain access to damages that may be awarded to direct purchasers in the federal action. (Code Civ. Proc., § 386.) Under *Illinois Brick* only direct purchasers are entitled to any such award, and attempts by state courts or defendants in state court actions to force federal plaintiffs to disgorge any part of the recovery to which they are expressly and solely entitled under federal law may well directly conflict with the federal decisions and the rationale behind them. Arguably, a direct purchaser will be less likely to sue if he knows that, after he obtains recovery, he may be required to "pass-on" that recovery to state court plaintiffs. "Simple" procedural devices normally available under state law thus may be inapplicable where the federal and state systems interact.

Next, plaintiffs assert that the risk to defendants of multiple liability becomes substantial only after plaintiffs have won. However, joinder is an appropriate protective remedy *before* any duplicate relief to plaintiff is assured. In the case before us, for example, a parallel federal action is proceeding in which direct purchasers from defendants are an integral part of the plaintiff class at the top of plaintiffs' distribution chain.

Apart from the danger of improper duplicative awards, another related consideration persuades me that a joinder of plaintiffs is required. If the present federal action involving direct purchasers across the United States results in a jury verdict for defendants it is arguable that such a verdict will have either a res judicata or collateral estoppel effect on the present case. The majority completely ignores this problem, commenting only that questions of pass-on are irrelevant and therefore not subject to an inconsistent result in the federal action. (See *ante,* p. 23.) Plaintiffs in the case before us can recover only if they can establish an overcharge by defendants to direct purchasers which overcharge has been passed down the distribution chain to them as indirect purchasers. If there is a judgment for defendants in the federal action on the ground that there was no antitrust violation causing an overcharge to direct purchasers, that judgment arguably would

estop plaintiffs in this state action. (See Degnan, *Federalized Res Judicata* (1976) 85 Yale L.J. 741, 767-773; cf. *Ford Motor Co. v. Superior Court* (1973) 35 Cal.App.3d 676, 679 [110 Cal.Rptr. 59] [after dismissal of federal antitrust action plaintiff barred from bringing Cartwright Act suit based on same acts alleged in federal complaint: "The two actions . . . rested on but a single invasion of one primary right . . ."]; *Federated Department Stores, Inc. v. Moitie* (1981) 452 U.S. 394 [69 L.Ed.2d 103, 101 S.Ct. 2424] [antitrust plaintiffs who brought state action instead of appealing after losing in federal antitrust action were barred on res judicata grounds from proceeding after removal of the new action to federal court despite the fact that plaintiffs in related suits had successfully appealed].) If on the other hand, the direct purchaser plaintiffs prevail in the federal action all of the above problems of duplicative recovery would be squarely raised.

Thus, in my view, joinder is appropriate because of the substantial possibility of multiple recovery. Moreover, even if plaintiffs before us are correct that, upon proof of "pass on," they are entitled to relief through apportionment of any recovery received by plaintiffs in the federal action, and thus problems of duplicative recovery will not occur, a determination will still have to be made regarding the competing rights of various sets of plaintiffs to any treble damages recovery.

In *Bank of California v. Superior Court* (1940) 16 Cal.2d 516, 521 [106 P.2d 879], we described situations relating to a "common fund" which require all interested parties to be joined: "There may be some persons whose interests, rights, or duties will inevitably be affected by any decree which can be rendered in the action. Typical are the situations where a number of persons have undetermined interests in the same property, or in a particular trust fund, and one of them seeks, in an action, to recover the whole, to fix his share, or to recover a portion claimed by him. The other persons with similar interests are indispensable parties. The reason is that a judgment in favor of one claimant for part of the property or fund would necessarily determine the amount or extent which remains available to the others."

Contrary to the majority, but consistent with *Illinois Brick,* I view the damages flowing from an overcharge antitrust violation, if multiple recoveries are barred, as constituting a common fund. The Supreme Court had this precisely in mind when it observed: "potential plaintiffs at each level in the distribution chain are in a position to assert conflicting claims to a common fund—the amount of the alleged overcharge—by contending that the entire overcharge was absorbed at that particular level in the chain." (*Illinois Brick,* 431 U.S. at p. 737 [52 L.Ed.2d at p. 720], fn. omitted; see

*Atlantic Richfield Co.* v. *Superior Court* (1975) 51 Cal.App.3d 168 [124 Cal.Rptr. 63].)

I find unpersuasive the majority's contention that there is no logical inconsistency in simultaneous federal and state antitrust awards. It is no answer to the problem before us to note that in "common fund" situations the prospective claimants may recover pro rata shares of the fund while here the plaintiffs may be in an adversarial position. Whenever there are competing claims, the competitors with interest in the funds are adversaries. The real problem remains—if indeed the right to recover for an overcharge creates a common fund—what will be the effect on the excluded claimants in a related state action of a federal court decision awarding all interests in the common fund to one of several potential claimants? To me the competing claims here involved make invocation of the joinder statute entirely proper.

In summary, because of the significant unresolved issues affecting the rights of parties to this action as well as persons not parties but with interests affected by this suit, I find compelling the high court's assessment of joinder in *Illinois Brick*: "A treble-damages action brought by one of these potential plaintiffs [persons at each level of the distribution chain] (or one class of potential plaintiffs) to recover the overcharge implicates all three of the interests that have traditionally been thought to support compulsory joinder of absent and potentially adverse claimants: the interest of the defendant in avoiding multiple liability for the fund; the interest of the absent potential plaintiffs in protecting their right to recover for the portion of the fund allocable to them; and the social interest in the efficient administration of justice and the avoidance of multiple litigation. [Citations.]" (431 U.S. at pp. 737-738 [52 L.Ed.2d at p. 720].)

Additional guidance favoring joinder may be found in the Law Revision Commission comment to the 1971 amendment to Code of Civil Procedure section 389 which noted that the section was "revised to substitute practically in its entirety Rule 19 of the Federal Rules of Civil Procedure . . . ." Accordingly, "[i]t is therefore appropriate to use federal precedents as a guide to application of the statute." (*Conrad* v. *Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 237, 241, [120 Cal.Rptr. 803]; see *Van Atta* v. *Scott* (1980) 27 Cal.3d 424, 451 and fn. 30 [166 Cal.Rptr. 149, 613 P.2d 210].) As the high court expressly declared in *Illinois Brick*: "if the defendant, for any of a variety of reasons does not choose to interplead the absent potential claimants, there would be a strong argument for joining them as 'persons needed for just adjudication' under Fed. Rule Civ. Proc. 19(a) . . . . These absent potential claimants would seem to fit the classic definition of 'necessary parties,' for purposes of compulsory joinder . . . ."

(431 U.S. at pp. 738-739, fns. omitted [52 L.Ed.2d at pp. 720-721].) Under both state and federal authority, joinder is appropriate.

A secondary issue, raised by plaintiffs for the first time in their petition for hearing with us, involves the party upon whom falls the burden of naming those to be joined in the litigation. It seems to me that the plaintiffs have more accurate knowledge of, or at least access to, identification of those persons or entities along the chain of distribution. In the federal action the number of direct purchasers from defendants is so numerous that plaintiffs are proceeding as a class action. Defendants would have a difficult task if they were required to trace the sales to plaintiffs here through all their direct purchasers, the majority of whom may well have no relationship to this action.

Furthermore, Code of Civil Procedure section 389, subdivision (c), provides that "A complaint or cross-complaint shall state the names, if known to the pleader, of any persons as described in paragraph (1) or (2) of subdivision (a) who are not joined and the reasons why they are not joined." (See *Illinois Brick,* 431 U.S. at p. 739 [52 L.Ed.2d at p. 721] ["The plaintiff bringing the treble damages action would be required under Fed. Rule Civ. Proc. 19(c), to 'state the names, if known,' of these absent claimants"].) I believe that it is incumbent upon plaintiffs to name the required parties or to suffer the risk of dismissal if they fail to do so or fail to explain the basis for their omission.

Finally, on the burden point, it may be observed that plaintiffs had apparently named as defendants in their action three direct purchasers whom they have subsequently dismissed because of the federal court's recertification of the class. It thus appears to me that plaintiffs do indeed have knowledge of the persons through whom they must prove their case and the added obligation to plaintiffs becomes no burden at all. Plaintiffs will be required to discover the persons or entities in the chain of distribution between their purchase and defendants' initial sale in order to prove that any overcharge was passed on to them. Nor are we here faced with a claim by defendants that plaintiffs must now join any users to whom plaintiffs might have sold their product thus making identification more difficult. As to such an assertion, *Illinois Brick* suggested that one possible procedural solution in such a situation was appointment of a class representative of such consumers. (431 U.S. at p. 739 [52 L.Ed.2d at p. 720].) Alternatively, another approach is to allow courts to inquire whether users further down the distribution chain are too remote or speculative to permit standing. (See Harris & Sullivan, *Passing On The Monopoly Overcharge: A Comprehensive Policy Analysis* (1979) 128 U.Pa.L.Rev. 269, 347, and fns. 149, 150.) In any event, plaintiffs, who will be required to identify the others in the line of

distribution leading to them in order to prevail, are best situated to identify the necessary parties.

From the foregoing, I conclude that joinder is appropriate for purchasers in the distribution chain leading to plaintiffs. I would issue a writ of prohibition directing the superior court to vacate its order denying defendants' motion to dismiss and ordering it to effect joinder of other purchasers within the line of distribution leading from defendants to plaintiffs. If it appears that any of such parties are not amenable to the court's jurisdiction, then the trial court should exercise its balancing function carefully applying those factors described by the Legislature in Code of Civil Procedure section 389, subdivision (b).