EDMUND G. BROWN JR. Attorney General MARC J. NOLAN Deputy Attorney General
THE HONORABLE KEVIN JEFFRIES, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
For purposes of Vehicle Code section 35782(b), what is the definition of the term "unusually large or heavy load"?
 CONCLUSION
For purposes of Vehicle Code section 35782(b), the term "unusually large or heavy load" has no uniform statewide definition, but rather refers to a vehicle load that (1) exceeds the statutory size and weight maximums prescribed in the Vehicle Code, and (2) is sufficiently large or heavy, as determined by the Department of Transportation or a local authority, to pose a substantial risk to public facilities that is not adequately covered by the level of insurance otherwise required by law. *Page 2 
 ANALYSIS
Division 15 of the Vehicle Code[1] contains various size and weight limits for the vehicles operated and loads hauled on the State's highways.[2] The prescribed limits are not absolute, however. The Legislature has authorized the Department of Transportation (Department) and local authorities[3] to issue permits (for a set fee) "[t]o operate or move a vehicle or combination of vehicles or special mobile equipment of a size or weight of vehicle or load exceeding the maximum specified in this code."[4] Any "vehicle having an unladen weight of over 7,000 pounds which is used in the transportation of property in the conduct of a business" must carry liability insurance or otherwise demonstrate financial security in the amounts "prescribed by the Public Utilities Commission for owners and operators of for-hire vehicles subject to its jurisdiction and control."[5] The minimum coverage level for most vehicles fitting this definition is currently a "combined single limit" of $600,000 for a single accident, with higher minimums imposed for vehicles carrying dangerous materials such as petroleum products, hazardous waste, or explosives.[6]
Subdivision (a) of section 35782 allows the Department or a local authority to issue (or withhold) a permit at its discretion, and to impose limits or conditions on the permit (e.g., number of trips permitted, seasonal or other time limitations, etc.) "when necessary to protect against injury to the road, foundations, surfaces or structures." Subdivision (b) of section 35782 — the provision at issue here — provides that a permitting authority may not generally require the posting of a bond as a condition of issuing a permit for an excess load, except that the authority may require extra insurance or other *Page 3 
financial security for loads designated as "unusually large or heavy."[7]
Finally, subdivision (c) of the statute states that a permitting entity may not require proof of financial responsibility in excess of the minimum statutory insurance levels as a condition of a permit, "except as provided in subdivision (b)."
What, then, constitutes an "unusually large or heavy load" that would allow the Department or a local authority to require extra insurance or financial security? To answer this question, we employ well-established rules of statutory interpretation, which assist us in our primary task of ascertaining the Legislature's intent.[8] We look first to the language of the statute, giving effect whenever possible to its "plain meaning."[9] If the plain meaning is not apparent, or if the language is susceptible of differing interpretations, we may resort to extrinsic evidence of legislative intent, including "the ostensible objects to be achieved and the legislative history."[10] In any case, we must interpret the statute in context, examining other legislation on the same subject when it helps us to determine the Legislature's probable intent.[11]
The statutory provision in question, section 35782(b), appears in an article of the Vehicle Code that is dedicated to oversized or overweight vehicles and loads for which special permits are required, and the statute itself contemplates the necessity of acquiring such a permit. Therefore we start our analysis with the understanding that an "unusually large or heavy load" is one that exceeds the statutory size and/or weight maximums generally prescribed in the Vehicle Code. Next, we note that in section 35782(b) the phrase "unusually large or heavy loads" is qualified by the words that immediately follow it — i.e., "that pose a substantial risk to public facilities." Thus, while section 35782 generally forbids authorities from requiring special financial security as a condition of a *Page 4 
permit for an excess load, it nevertheless allows authorities to impose such a condition when a particular load is found to be large or heavy enough to pose a substantial risk to public facilities.
Section 35782(b)'s general prohibition against requiring the posting of a bond, and its exception for unusually large or heavy loads, came about as a result of legislation enacted in 1990.[12] Up until that time, section 35782 had generally allowed the Department or a local authority to "require the undertaking or other security as may be deemed necessary to protect the highways and bridges from injury, or to provide indemnity for any injury resulting from the operation of the [permitted] vehicle."[13] As originally introduced, Assembly Bill 4228 (which was sponsored by the California Trucking Association) simply eliminated the authority to require the posting of any bond as a condition for issuing an over-maximum permit.[14] The Department opposed the bill, expressing concern that in some cases the standard insurance required by law would not be sufficient to cover the damage that an excess load might cause, leaving the Department to cover the cost of repairs.[15] At the Department's urging, [16] the bill was amended to allow an extra-insurance condition for what came to be known as "unusually large or heavy loads which pose a substantial risk to public facilities."[17]
In practice, a determination as to whether a particular load is large or heavy enough to pose a substantial risk to public facilities is necessarily one for the permitting *Page 5 
authority (whether the Department or a local authority) to make. The considerations will necessarily vary depending on the facilities, circumstances, or facilities at issue. For example, a load that poses little or no risk of damaging a six-lane state highway may easily pose a "substantial risk" of damaging a small city street or county road. Many other factors might become material under various circumstances; each situation must be considered on its own merits.
That is not to say that the determination called for by section 35782(b) is completely standardless, however. "Substantial risk" is a phrase frequently used in California statutes. While it has not been interpreted specifically in the context of section 35782(b), we find instructive a passage from the Supreme Court's opinion in Union Carbide Corp. v.Superior Court, [18] which considered the meaning of the term as it was used in a statute requiring the joinder of absent parties in a lawsuit when there is a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations."[19] The Court observed that "a `substantial risk' means more than the theoretical possibility" of the absent party's asserting a claim that could result in multiple liability.[20] "The risk must be substantial as a practical matter."[21] We believe that a similar construction of the phrase is warranted in this context. Thus, the entity seeking to impose an extra insurance or other financial security requirement should have a reasonable basis in fact for concluding that a given load poses a substantial risk to public facilities under its jurisdiction. In addition, because the exception allows the entity to require extra insurance or financial security, beyond that already required by law for large loads, we believe the permitting entity should also have a reasonable basis for concluding that the risk would not be adequately covered by the insurance already required by law.[22] In short, our interpretation of the term "unusually large or heavy load" contemplates different applications depending on differing circumstances.
In contrast to this interpretation, it has been suggested to us that the term "unusually large or heavy load" as used in section 35782(b) should be interpreted as *Page 6 
having a uniform, statewide definition. Specifically, it has been suggested that the applicable definition should be the same as the one that the Legislature has provided for similar phrasing contained in section 35795(b), which governs the kinds of fees that may be assessed in association with permits for oversized loads. For the reasons that follow, however, we reject this suggestion.
In a 2005 opinion, we concluded that a local authority may not assess a permitting fee that exceeds the fee charged by the Department for a particular oversized load, but that it may assess a separate charge as set forth in section 35795, subdivision (b): "Special services necessitated by unusually large or heavy loads requiring engineering investigations, escorts, tree trimming, or other services shall be billed separately for each permit."[23] At the time we issued our 2005 opinion, the term "unusually large or heavy load" was not defined with any further specificity within section 35795. Shortly after our opinion was published, the Legislature amended section 35795 to impose an explicit, uniform statewide definition for local authorities to employ with regard to the term "unusually large or heavy load" as it is used in section 35795(b).[24] Specifically, the amended statute provides that, for purposes of determining whether "special services are necessitated by an unusually large or heavy load, a local authority shall be governed by the criteria set forth in subdivision (b) of Section 1411.3 of Title 21 of the Code of Regulations."[25] In turn, this regulation provides that special charges may be imposed for services[26] necessitated by individual loads that are:
 (1) more than 14 feet wide, or
 (2) more than 135 feet in overall length, or
 (3) of a weight that requires:
 (A) more than a 13-axle, single-vehicle-width hauling combination, or
 (B) a 13-axle, single-vehicle-width hauling combination *Page 7 
with a load deck where the inner axles in the groups bordering the load deck are 40 feet or more apart, or
 (C) two or more side-by-side vehicles with a combined width of 14 feet or more supporting the load.
In light of the question before us, however, what we find to be particularly significant about the legislation amending section 35795 is that it did not modify the statute's preexisting language that states: "Nothing in this section shall limit or restrict the application of section 35782."[27] Therefore, while we would ordinarily give great weight to an administrative regulation that fleshes out the definition of one term that is used in two related statutes, in this particular situation we disregard the regulatory definition because that is what the plain language of section 35795 tells us to do.
Moreover, subsequent legislative developments only strengthen our confidence that the regulatory definition is not meant to apply to section 35782. During the very next (2007-2008) legislative term, a bill was introduced that would have imposed the same statewide definition for the term "unusually large or heavy load" to section 35782(b) that had recently been adopted for section 35795(b). Specifically, Senate Bill 229 would have added a new subdivision (d) to section 35782, which would have provided:
 (d) For the purposes of determining whether, under subdivision (b), extra insurance or other financial security is required by an unusually large or heavy load, a local authority shall be governed by the criteria set forth in subdivision (b) of Section 1411.3 of Title 21 of the California Code of Regulations.[28]
Senate Bill 229 was not adopted, but to understand the context in which its proposed amendment to section 35782 was raised, we refer to a bill analysis report prepared for the Senate Transportation and Housing Committee, which was to consider the legislation in the first instance.[29] That analysis discussed then-existing law as follows:
 Neither [the Department] nor a local authority may require posting *Page 8 
of a bond as a condition of the issue of a permit, except either may require extra insurance for "unusually large or heavy loads" that pose a substantial risk to public facilities. Existing statutory law does not define unusually large or heavy loads.[30]
The report then described the bill's purpose, and the arguments in opposition to it:
 Purpose: The sponsor, the Southern California Contractors Association, notes that its members are engineering contractors that move their heavy equipment from one jobsite to another under permits issued by Caltrans and local authorities. Because a piece of heavy equipment may travel across multiple cities in Southern California that are adjacent to each other, contractors find differing permit requirements highly frustrating. This bill provides for uniformity in the definition of "unusually large or heavy loads."
 Arguments in Opposition: The League of California Cities opposes this bill, because it sees no benefit from limiting the types of loads for which extra insurance can be required. The League notes in its opposition letter that current law explicitly allows cities to require extra insurance for loads deemed to pose a risk to public facilities and that this has served the public's interest well. Extra insurance requirements for unusually large or heavy loads protect public property from damage caused by moving these vehicles through cities. The League believes that limiting the ability of local governments to require extra insurance will create additional problems for city street maintenance and safety and leave taxpayers to pay for damages to public facilities and other infrastructure caused by these large loads.[31]
In general, evidence of unpassed legislation is of very limited utility in statutory construction, [32] and certainly the Legislature's failure to pass this particular bill is not central to our conclusion, which, as we have already stated, is based on the preexisting and unaltered existing language of sections 35782 and 35795 and of the entire statutory scheme to which those sections belong. Still, we believe that our conclusion finds *Page 9 
reinforcement from the fact that the Legislature was presented with a nearly contemporaneous opportunity to adopt a single regulatory definition for a phrase that appears in two related statutes, but only applied it to one of them.[33] This is especially significant, we believe, where a recognized constituency had publicly voiced its opposition to the idea of amending section 35782 in the manner proposed, and where no reasonable legislator could have believed that the uniform regulatory definition adopted for the term "unusually large or heavy load," as that term is used in section 35795(b), would somehow have carried over and applied in the context of section 35782(b) without further legislative action. As indicated above, the bill analysis prepared for the Senate Transportation and Housing Committee noted that the term as used in section 35782(b) remained "not define[d]" under "[e]xisting statutory law."[34]
To return to the plain language of the statutes, however, the preexisting and unmodified language of section 35795 states that "[n]othing in this section shall limit or restrict the application of section 35782."[35] And, of course, the "unusually large or heavy loads" phrasing contained in section 35782 has its own limiting modifier — i.e., loads that "that pose a significant risk to public facilities" — that does not appear in section 35795(b). Therefore, with or without the evidence of unpassed legislation, we believe that we are bound by the plain language of the statutes to take the phrase "unusually large or heavy load" on its own merits as it exists in section 35782(b), and we are not free to import into it the special regulatory definition that has been crafted for the particular purposes of section 35795.
Therefore, we conclude that, for purposes of Vehicle Code section35782(b), the term "unusually large or heavy load" has no uniform statewide definition, but rather refers to a vehicle load that (1) exceeds the statutory size and weight maximums prescribed in the Vehicle Code, and (2) is sufficiently large or heavy, as determined by the Department of Transportation or a local authority, to pose a substantial risk to public facilities that is not adequately covered by the level of insurance otherwise required by law.
[1] Veh. Code §§ 35000-35796. All further references to the Vehicle Code are by section number only.
[2] See § 35000 ("The provisions of this division refer exclusively to the size and weight of, and loads upon, vehicles when operated upon the highways.") See also § 360 ("A highway is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street.")
[3] Section 385 defines "local authorities" as "the legislative body of every county or municipality having authority to adopt local police regulations."
[4] § 35780(a)(1).
[5] § 16500.5(a)(2) (c).
[6] Pub. Util. Commn. Gen. Or. 100-M; see also Pub. Util. Code § 5161(a) (pertaining to carriers of household goods).
[7] The full text of section 35782(b) is as follows:
 The Department of Transportation or a local authority may not require the posting of a bond as a condition of the issuance of a permit, except that a requirement of extra insurance or other financial security may be imposed as a condition for a permit for unusually large or heavy loads that pose a substantial risk to public facilities.
[8] Freedom Newsp., Inc. v. Orange Co. Employees Ret. Sys.,6 Cal. 4th 821, 826 (1993).
[9] Kimmel v. Goland, 51 Cal. 3d 202, 208-209 (1990).
[10] Day v. City of Fontana, 25 Cal. 4th 268, 272 (2001).
[11] Cal. Teachers Assn. v. Governing Bd. of Rialto Unified Sch.Dist., 14 Cal. 4th 627, 642 (1997).
[12] 1990 Stat. ch. 938 § 1.
[13] Former § 35782, as enacted 1959 Stat. ch. 3, amend. 1974 Stat. ch. 545 § 257.
[14] Assembly 4228, 1989-1990 Reg. Sess. (Mar. 2, 1990).
[15] Leg. Analyst Rpt. On Assembly 4228, as amend. May 14, 1990 (May 23, 1990); see Assembly Transp. Comm. Republican Analysis Assembly 4228, as amend. Apr. 5, 1990 (May 1, 1990); Assembly Transp. Comm. Analysis on Assembly 4228, as amend. May 14, 1990 (Jun. 7, 1990); Sen. Transp. Comm. Analysis on Assembly 4228, as amend. May 14, 1990 (June 28, 1990); Sen. Rules Comm. Floor Analysis on Assembly 4228, as amend. May 14, 1990 (Aug. 7, 1990). Legislative committee reports can be useful, albeit secondary, indicators of legislative intent. California Teachers Assn.,14 Cal. 4th at 646.
[16] Dept. of Transp. Enrolled Bill Rpt. On Assembly 4228 (Aug. 22, 1990).
[17] Assembly 4228, 1989-1990 Reg. Sess. (as amend. May 14, 1990); 1990 Stat. ch. 938 § 1. In a non-substantive amendment made in 1996, the above-quoted phrasing was changed to "unusually large or heavy loadsthat pose a substantial risk to public facilities." 1996 Stat. ch 124 § 137. The change does not affect our analysis.
[18] 36 Cal. 3d 15 (1984).
[19] Civ. Proc. Code § 389(a)(2)(ii).
[20] Union Carbide, 36 Cal. 3d at 21.
[21] Id.
[22] The various legislative committee reports and analyses that we have cited also mention the Department's assertion that its practice at that time was to impose an extra insurance requirement only when damage to public facilities could exceed the $600,000 of insurance coverage otherwise required by law. This practice, according to the Department, conformed to the provisions of Assembly Bill 4228, as amended.
[23] 88 Ops.Cal.Atty.Gen. 189, 193-195 (2005) (quoting the then-existing language of section 35795(b)).
[24] 2006 Stat. ch. 242, § 1.
[25] § 35795(b)(3).
[26] These services include engineering investigations, route definition, coordination, and control of permit movement for each individual load that meets the stated criteria.
[27] § 35795(c).
[28] Sen. 229, 2007-2008 Reg. Sess. (Feb. 13, 2007).
[29] Legislative records indicate that the bill's author requested the cancellation of committee hearings that had been scheduled on the bill.
[30] Sen. Transp. Hous. Comm. Rpt. Sen. 229, 2007-2008 Reg. Sess. 1 (Jan. 2, 2008) (emphasis in original).
[31] Id.
[32] DaVita v. Co. of Napa, 9 Cal. 4th 763, 795 (1995); see Grupe Dev.Co. v. Super. Ct., 4 Cal. 4th 911, 922-923 (1993).
[33] See generally Dyna-Med, Inc. v. Fair Empl. and Hous. Comm.,43 Cal. 3d 1379, 1396 (1987) (discussing significance of Legislature's decision to empower one administrative agency with the authority to impose monetary damages when it "decline[d] similarly to empower another").
[34] Sen. Transp. Hous. Comm. Rpt. Sen. 229, 2007-2008 Reg. Sess. 1 (Jan. 2, 2008).
[35] § 35795(c). *Page 1