Michael MARTINO, McDonald's Drive-In of Appleton, Wisconsin, a Wisconsin Corporation, and McDonald's Drive-In of Manitowac, Wisconsin, a Wisconsin Corporation, Individually and on Behalf of All. Other Persons or Corporations Similarly Situated, Plaintiffs,

v.

McDONALD'S SYSTEM, INC., an Illinois Corporation, and Franchise Realty Interstate Corporation, an Illinois Corporation, Defendants.

No. 77 C 0098.

United States District Court, N. D. Illinois, E. D.

March 5, 1980.

Judson Miner, Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.

Alan H. Silberman, Louis C. Keiler, Gary Senner, Earl E. Pollock, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This action arises out of two alleged tying arrangements imposed by the defendant McDonald's System, Inc. ("McDonald") upon its franchisees. As a condition of obtaining a license to operate a franchise, franchisees allegedly are required to lease the property underlying the restaurant from defendant Franchise Realty Interstate Corporation ("Franchise Realty"), an affiliate of McDonald's. In addition, plaintiffs allege that Coca-Cola is the only cola soft drink that franchisees are allowed to stock. Plaintiffs assert that these requirements are tying arrangements illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1.[1]

By an opinion of January 5, 1979, the Court certified under Fed.R.Civ.P. 23(b)(3) two separate classes of franchisees with respect to the lease and Coca-Cola tying claims.[2] *Martino v. McDonald's System, Inc.*, 81 F.R.D. 81, 93 (N.D.Ill.1979). The Court therein found that all of the requirements of Fed.R.Civ.P. 23(a) had been met. Moreover, the Court held that the elements of an illegal tying arrangement—(1) conditioning the sale of one item to the purchase of another item; (2) coercion; (3) adequate market power; (4) involvement of interstate commerce; and (5) fact of damage—could be proven, if at all, on a classwide basis.

On January 25, 1979, the defendants filed a motion asking the Court to reconsider its order granting class certification. The Court entertained extensive rebriefing of the issues, as well as oral argument by the parties.[3] The defendants have set forth a number of arguments in support of their position that plaintiffs cannot prove the elements of their claim on a classwide basis. The only contention which the Court believes merits discussion, however, involves the plaintiffs' ability to prove classwide their fact of damage.[4]

1. Jurisdiction is invoked pursuant to 15 U.S.C. §§ 15, 26.

2. With respect to the lease tying agreement, the court certified a class consisting of all leases entered into since 1961, the date at which the alleged arrangement became mandatory. With respect to the Coca-Cola tying arrangement, the certified class consisted of all franchisees of McDonald's.

3. The decision granting class certification was issued by Judge Prentice H. Marshall, who at the time presided over this action. The briefs on reconsideration of his opinion, as well as oral argument, were directed to Judge Marshall. On September 4, 1979, the case was transferred to this Court by random assignment. Since that time, the parties have filed supplemental briefs in support of their respective positions on this motion to reconsider.

4. As Judge Marshall recognized, "[t]he most difficult issue in this motion for class certification is the fact of damage requirement." *Martino v. McDonald's System, Inc.*, 81 F.R.D. 81, 90 (N.D.Ill.1979).

In addition to raising this issue, the defendants attack Judge Marshall's conclusion that the other elements of a tying agreement—coercion, market power, and interstate commerce—may be satisfied on a classwide basis. None of the arguments set forth by defendants, however, persuade the Court that Judge Marshall's conclusions as to these issues should be modified.

Defendants also argue that there is no lease tying arrangement; rather, they characterize the franchise and the lease as part of one package. Whatever the merit of this allegation, it is irrelevant to the issue of whether proof of a tying arrangement can be made on a classwide basis. Equally irrelevant to the issue of class certification is defendants' contention that the lease agreement actually is a "good deal" for the franchisees.

## I. FACT OF DAMAGE

[1, 2] Fact of damage, proof of which is an essential element to establishment of antitrust liability, contains two distinct aspects. First, plaintiffs must demonstrate that they have suffered some injury. Second, they must prove that the injury was caused by defendant's antitrust violation. *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Martino v. McDonald's System, Inc.*, 81 F.R.D. 81, 90 (N.D.Ill.1979). At this stage of the proceeding, it is necessary only to show that proof of fact of damage would be made on a classwide basis; plaintiffs need not prove that fact of damages actually exist. *Martino, Id.*

As is evident from the foregoing, the fact of damage question is distinct from the issue of actual damages. Fact of damage pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relate to the appropriate measure of individual relief. Although actual damages typically require the courts to become involved in individual calculations of damages, this has been held to be an insufficient basis for denying class certification where the common issues relevant to liability can be established on a classwide basis. *See, e. g., Bogosian*, 561 F.2d at 456. In such instances, bifurcated trials have been used to separate the common issue of liability from the individual question of actual damages. Such a course is not uncommon in antitrust litigation. *See e. g., Hedges Enterprises, Inc. v. Continental Group*, 81 F.R.D. 461, 475 (E.D.Pa.1979); 3B Moore's Federal Practice ¶ 23.45[2] at 335.

Class treatment of fact of damage issues, however, presumes the ability to prove fact of damage without becoming enmeshed in individual questions of actual damage:

[W]hen an antitrust violation impacts upon a class of persons who do have standing, there is no reason in doctrine why proof of the impact cannot be made on a common basis *so long as the common proof adequately demonstrates some damage to each individual.* Whether or not fact of damage can be proven on a common basis therefore depends upon the circumstances of each case.

*Bogosian*, 561 F.2d at 454 (emphasis supplied). Where proof of fact of damage requires evidence concerning individual class members, the common questions of fact become subordinate to the individual issues, thereby rendering class certification problematic. *See State of Alabama v. Blue Bird Body Company, Inc.*, 573 F.2d 309, 327–328 (5th Cir. 1978); *Windham v. American Brands, Inc.*, 565 F.2d 59, 69–70 (4th Cir. 1977) (en banc), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978); *Veizaga v. National Board for Respiratory Therapy*, 1979–1 Trade Cases ¶ 62,497 at 76,908 (N.D.Ill., March 19, 1979). Under these circumstances, bifurcation cannot provide the means for separating the common from the individual questions, since the question of liability is inextricably bound up with individual proof of damages:

It is difficult to understand, though how a trial judge, however skillful, could deny or limit a litigant's right to offer *relevant* "intertwined matter," whether addressed to the issue of violation or that of injury and damage.

*Windham*, 565 F.2d at 71 (emphasis original). Indeed, any effort to limit a litigant's right to offer individual evidence relevant to the fact of damage question might run afoul of the Seventh Amendment guarantee to jury trial. *See Blue Bird*, 573 F.2d at 329.

Thus, the central question facing the Court is whether the Sherman Act violations alleged herein "can be effectively adjudicated in a class proceeding independent from the proceeding in which individual damages would be assessed." 3B Moore's Federal Practice ¶ 23.45[2] at 335. It is in light of this question that the Court will reexamine the decision to certify the classes of franchisees for litigation of the alleged tying arrangements.

### A. *The Coca-Cola Tying Arrangement*

In certifying the class of franchisees with respect to the alleged Coca-Cola tying

arrangement, the Court relied on the reasoning of *Krehl v. Baskin-Robbins Ice Cream Co.,* 78 F.R.D. 108 (C.D.Cal.1978). In that case, twenty named franchisees alleged that Baskin-Robbins illegally had tied the sale of particular ice cream products to the sale of the Baskin-Robbins trademark. The court recognized that a grant of class certification would be appropriate if fact of damage could be proven on a classwide basis. This would entail proof that the plaintiff class had available to it alternate sources of less expensive products of comparable quality that it could not take advantage of because of the tie. In finding that fact of damage could be proven classwide, the court observed:

> It is, however, more than likely that potential competitors to the Baskin-Robbins area franchisors will themselves have to operate on a comparable scale if they are to supply the variety and volume demanded by the Baskin-Robbins franchisee. It is reasonable to assume that such a competitor would, in many cases, compete not only as to individual stores, but as to regions. If this is the case, the Court's burden as to fact of damage will be reduced considerably.

*Id.* at 120.

The Court believes this reasoning applies equally to the instant case. In order to compete with Coca-Cola in sales to McDonald's franchisees, it is reasonable to assume that a manufacturer would have to operate at least on a regional basis. Thus, the elements of fact of damage could be proven for the entire class—or appropriate regional subclasses—by evidence that franchisees could have purchased colas of comparable quality less expensively, but were precluded from so doing by the tying arrangement.

The defendants argue, however, that individual franchises might be more or less profitable depending upon the cola soft drink that is served. The defendants contend that proof of fact of damage will require not only evidence of the existence of a less expensive cola alternative, but also evidence as to whether individual franchises would have been less profitable had they stocked a cola soft drink other than Coca-Cola. Since this would require inquiry into each franchise's individual circumstances, the defendants argue that class certification is inappropriate.[5]

The Court believes that this purported need to examine the circumstances of each individual franchise is too speculative to justify denial of class certification at this time. Accordingly, the Court reaffirms the January 5, 1979, decision to certify a class of all franchisees on the issue of the legality of the alleged Coca-Cola tying arrangement.[6] At this point in the litigation, it appears that the fact of damage issue can be determined apart from questions of actual damages to individual franchisees. If it later should develop that plaintiffs are unable to prove fact of damage on a classwide basis, the Court at that time will consider class decertification under Fed.R.Civ.P. 23(c).

B.   *The Lease Tying Arrangement*

The plaintiffs herein have alleged that the defendant McDonald's requires franchisees to lease the property underlying the restaurant from defendant Franchise Realty. Plaintiffs further have alleged that the defendants charge a rent at least 30% in excess of Franchise Realty's cost of owning

---

5.   The defendants also suggest that a determination of the profitability a comparable alternative soft drink would entail a determination of the relative yield of soft drink from equal amounts of cola syrup. A less expensive cola syrup which yields less beverage than does Coca-Cola ultimately might be more costly than Coca-Cola. Introduction of evidence on this score, however, could be done on a classwide basis; thus, it poses no bar to certification of a class on the Coca-Cola tying arrangement.

6.   The Court also is convinced that class treatment of this issue would be superior to other methods of adjudication. Fed.R.Civ.P. 23(b)(3). Since the common issues predominate over the individual questions, class treatment would promote judicial convenience and economy without presenting difficulties in the management of the class.

or renting the property.[7] The plaintiffs assert that as an alternative transaction, the franchisees could have leased or purchased a site for less than the rent paid to Franchise Realty.

In holding that this was sufficient to prove fact of damage on a classwide basis, the Court indulged in two assumptions. First, the Court assumed that since the franchisees all are "capable businessmen carefully screened by McDonald's, [they] would have been able to buy or lease a site for less than they pay to Franchise Realty." *Martino*, 81 F.R.D. at 91. Second, the Court assumed that because the markup by Franchise Realty was so large, it would be unnecessary to consider individual proof in determining that all the franchisees had suffered at least *some* damage. *Id.* Upon reconsideration, however, the Court must reject these assumptions.

It is reasonable to assume the classwide availability of a less expensive alternative transaction in a price-fixing case, such as *Hedges Enterprises, Inc. v. Continental Group*, 81 F.R.D. 461 (E.D.Pa.1979). There, the plaintiffs alleged that defendants had conspired to fix a minimum price on the sale of all consumer bags. The court observed that in the absence of this conspiracy, these bags would have been available to the plaintiffs at a lower price as established by competitive conditions. Thus, the court found that proof of the conspiracy to fix prices would be sufficient to establish fact of damage for the entire class of purchasers of consumer bags. *Id.* at 475.

■ In tying arrangement cases, however, it is not clear that there always will be a more attractive alternative transaction that was foreclosed by defendants' behavior; nor is it certain that a plaintiff always

will have the financial means to avail himself of any potential alternatives. Thus, the burden is on the plaintiff to show the classwide availability of less expensive alternative transactions. *See e. g., Cash v. Arctic Circle, Inc.*, 1980–1 Trade Cases ¶ 63,095 (E.D.Wash., December 14, 1979); *Krehl v. Baskin-Robbins Ice Cream Co.*, 78 F.R.D. 108 (C.D.Calif.1978).

■ Plaintiffs have failed to carry their burden to show that classwide alternatives exist with respect to the lease tying claim. Despite the fact that McDonald's franchisees are "capable businessmen," it is not at all clear that each franchisee would be able to lease or purchase business property in an alternative transaction. Owners of business property might be unwilling to deal with individual franchisees, preferring instead to deal with a national corporation such as McDonald's. Moreover, even if an owner would lease or sell his property to a franchisee, it is likely that he would do so on terms less favorable than those obtained by McDonald's. As the court noted in *Krehl*, "[t]he size and reputation of a tenant is a vitally important factor in determining the terms of a commercial lease." 78 F.R.D. at 121. In *Krehl*, the court denied class certification on an alleged lease tying arrangement similar to the one herein, finding that the necessary inquiry into the terms each franchisee might have obtained as compared to the terms actually obtained by defendant would "bury the Court in a consideration of intangibles." *Id.* The same considerations militate against granting class certification on the lease tying arrangement alleged herein.[8]

Furthermore, the foregoing discussion assumes that the franchisees would use the

---

**7.** There is some dispute over the exact amount of the markup. In his January 5 opinion, Judge Marshall referred to the 30% figure. 81 F.R.D. at 91. Since that time, plaintiffs have uncovered evidence which suggests that there might have been a 40% markup. Defendants, on the other hand, argue that the percentage markup only applies to franchises whose revenues are insufficient to trigger a percentage mechanism for determining monthly payments. McDonald's does not suggest, however, that the

payments required by this formula are less than those made under a straight markup method.

**8.** In another action involving the same alleged lease tying arrangement by McDonald's, a federal district court judge in Florida reached the same conclusion. *See Kypta v. McDonald's*, Case No. 73–678–CIV.–JE (S.D.Fla., October 5, 1977).

same site, with the only difference being that they rather than Franchise Realty would own or lease the property. If, however, the alternative transaction available to plaintiffs involved a different location for the restaurant, the Court would be faced with the additional inquiry into whether the alternative location would be as profitable as the one selected by McDonald's. Once again, this would require scrutiny of individual franchises and alternative locations, thereby making classwide proof of fact of damage impossible.

It is suggested that despite these variations in the cost of alternative transactions to individual franchisees, the large amount of the markup by Franchise Realty will ensure that all of the franchisees suffered at least some injury.[9] This argument, however, begs the central question. As indicated in the foregoing, it is uncertain that all the franchisees had available to them an alternative transaction at any price. Where transactions were available, the Court cannot say that the cost thereof would be less than the rent charged by Franchise Realty. In any event, these are precisely the type of questions that will require individual scrutiny, thereby rendering class certification inappropriate.

Nor does bifurcation provide a solution for the problems that would be posed by the certification of the class as to this issue. With respect to the lease tying arrangements, fact of damage is so imbedded in questions of individual damage as to make it impossible to determine liability on a classwide basis. An attempt to salvage class certification through bifurcation would be fruitless in that the Court would be unable to avoid delving into the peculiar circumstances of individual franchisees.[10] Thus, the Court concludes that the common questions presented by this action do not predominate over the issues affecting individual members.

The Court also finds that plaintiffs have not satisfied the requirement of Fed.R. Civ.P. 23(b)(3) by showing that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." See generally 3B Moore's Federal Practice ¶ 23.45[3]. Failure to certify the class would not be the "death-knell" of any action by the individual franchisees. This is not a case where the individual franchisees are impecunious, or where there claims are small; moreover, the potential of an award of attorney's fees under the antitrust laws facilitates the filing of individual actions. Furthermore, given the preponderance of individual issues that would be involved, certification of this claim as a class action would not promote the interests of judicial economy and efficiency. To the extent any minimal economy may be achieved, the Court believes that it would be negated by the difficulties that inevitably would arise in the management of any class certified with respect to this issue.

Accordingly, the Court holds that the issue of the Coca-Cola tying arrangement may be litigated as a class action, with the class consisting of all franchisees of McDonald's. On reconsideration, however, the Court finds that the predominance of individual questions and the lack of superiority of the class action vehicle precludes class certification on the issue of the lease tying arrangement. The named plaintiffs in this

---

**9.** Judge Marshall relied in part on this factor to distinguish *Krehl*, since the markup of the Baskin-Robbin leases therein was only $10.00 per month. In contrast, he concluded that "the alleged markup here would be sufficiently large to obviate the need for individual proof." 81 F.R.D. at 91. According to McDonald's, however, part of this markup defrays McDonald's cost of constructing the restaurant and closing the agreements. Plaintiffs would not save the entire cost of the markup by purchasing a site or leasing it from someone other than Franchise Realty. Thus, the markup is less substantial than it appears on its face.

**10.** On the other hand, any meaningful bifurcation would require the Court to limit the evidence introduced at the liability stage of the proceeding to that which is classwide in scope. By so doing, however, the Court would preclude the defendants from introducing evidence which might rebut liability as to individual franchisees. Such a course surely would be unjust. See *Windham*, 565 F.2d at 71; *Blue Bird*, 573 F.2d at 329.

action, of course, may litigate the lease tying arrangement on an individual basis. It is so ordered.

