Opinion
HANING, J.
Plaintiff B.W.I. Custom Kitchen, an indirect purchaser of glass containers, brought a class action against numerous corporate defendants alleging they had engaged in a conspiracy to set noncompetitive prices for glass containers in violation of California’s antitrust statute, the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) and the unfair competition statutes. (Bus. & Prof. Code, § 17200 et seq.) Plaintiff sought certification of a class comprised of California businesses which purchased glass containers indirectly from defendant manufacturers and paid inflated prices for such containers due to defendants’ alleged price-fixing conspiracy. The trial court refused to certify the class, holding that common questions of law and fact did not predominate over questions affecting only individual class members. We reverse.
Plaintiff B.W.I. Custom Kitchen, a sole proprietorship of Betty W. Imes, is in the business of packaging food products. The named defendants are corporations engaged in manufacturing glass containers. The first amended complaint alleges that defendants “engaged in a continuing conspiracy ... to fix, raise, maintain and stabilize the prices and terms and conditions of sale of glass containers and to allocate among themselves the glass container business in the State of California.” Plaintiff seeks to recover treble damages under the Cartwright Act as well as actual and punitive damages under the unfair competition statutes. Plaintiff also seeks to represent a class composed of all California businesses “who have purchased glass containers indirectly from any defendant in the State of California” during the time frame covered *1346 by the complaint. Plaintiff claims there are “several thousand” potential class members.
Most users of glass containers purchase them directly from the manufacturers. Plaintiff, however, and the class she seeks to represent, are “indirect purchasers.” That is, they did not deal directly with any defendant but instead purchased their glass containers from independent distributors who in turn purchased glass containers from defendants as well as other manufacturers.[1] As indirect purchasers, plaintiff and all others similarly situated are precluded from suing defendants under federal antitrust laws. In Illinois Brick Co. v. Illinois (1977) 431 U.S. 720 [52 L.Ed.2d 707, 97 S.Ct. 2061] the court ruled that, with few exceptions, indirect purchasers of an alleged price-fixed product cannot maintain a treble-damage action under federal antitrust laws predicated on the theory that the price-fixer’s overcharge was passed on to the indirect purchaser. In other words, in order to maintain a treble damage action involving price-fixing under federal law, the plaintiff must have dealt directly with the alleged price-fixer. As part of the rationale for its ruling, the court referred to the “evidentiary complexities and uncertainties” which would attend the efforts of indirect purchasers to establish that illegal overcharges were passed on to them. (Id., at p. 732 [52 L.Ed.2d at p. 717].)
The California Legislature promptly rejected the reasoning of Illinois Brick, and amended the Cartwright Act to allow anyone injured by an antitrust violation to bring suit, regardless of whether the plaintiff dealt directly or indirectly with the violator.[2] As the California Supreme Court subsequently observed, the Legislature’s action endorsed the view “that indirect purchasers are persons ‘injured’ by illegal overcharges passed on to them in the chain of distribution.” (Union Carbide Corp. v. Superior Court (1984) 36 Cal.3d 15, 20 [201 Cal.Rptr. 580, 679 P.2d 14];.see Comment, The California Legislature Steers the Antitrust Cart Right Off the Illinois Brick Road (1979) 11 Pacific L.J. 121.)
The main thrust of defendants’ opposition to the class was directed toward the class members status as “indirect purchasers.” Defendants took the posi *1347 tion that any alleged price increase for glass containers paid by indirect purchasers was too remote from the source of the overcharge and too individualized to be susceptible of class-wide proof. The trial court agreed and declined to certify the class, finding that plaintiff had failed to show “that conspiracy could be proved by class-wide evidence, that impact could be proved by class-wide evidence, or that these issues (even if they were common) predominate over the complex individualized issues of damages in indirect purchaser actions brought under the Cartwright Act.”
I*
II
We now resolve the issues of class certification. “[W]hen the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.” (Code Civ. Proc., § 382.) The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. (Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 704 [63 Cal.Rptr. 724, 433 P.2d 732].) The community of interest requirement embodies three factors: “(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.” (Richmond v. Dart Industries, Inc. (1981) 29 Cal. 3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) The California Supreme Court has repeatedly directed that in the absence of controlling state authority, our courts should utilize the procedural guidelines of rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.). [5] (See Richmond v. Dart Industries, Inc., supra, pp. 469-470, fn. 7; LaSala v. American Sav. & Loan Assn. (1971) 5 Cal. 3d 864, 872 [97 Cal.Rptr. 849, 489 P.2d 1113]; Vasquez v. Superior Court (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) “We note that it has never been the law in California that the class representative must have identical interests with the class members. The only requirements are that common questions of law and fact predominate and that the class representative be similarly situated. [Citation.]” (Classen v. Weller (1983) 145 Cal.App.3d 27, 46 [192 Cal.Rptr. 914].)
*1348 Trial courts have great discretion with regard to class certification, and reviewing courts will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used or (2) erroneous legal assumptions were made. (Richmond v. Dart Industries, Inc., supra, 29 Cal.3d at p. 470.)
In addition, a class certification order may be conditional and may be altered or amended before a decision on the merits. (Occidental Land, Inc. v. Superior Court (1976) 18 Cal.3d 355, 360 [134 Cal.Rptr. 388, 556 P.2d 750]; Vasquez v. Superior Court, supra, 4 Cal.3d at p. 821; Lazar v. Hertz Corp. (1983) 143 Cal.App.3d 128, 144 [191 Cal.Rptr. 849].)
 Plaintiff’s complaint alleges that defendants engaged in a horizontal price-fixing conspiracy to set the prices of glass containers in violation of the Cartwright Act, as well as the unfair competition statutes.[6] As a consequence, she contends, indirect purchasers such as plaintiff, “have paid more for glass containers than they would have but for the unlawful combination and conspiracy. ” As stated by the United States Supreme Court in Northern Pac. R. Co. v. United States (1958) 356 U.S. 1 [2 L.Ed.2d 545, 78 S.Ct. 514]: “[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.” (Id., at p. 5 [2 L.Ed.2d at p. 549].) Conspiring to fix prices has been characterized as “conduct that is manifestly anti-competitive” and therefore a per se violation of the Sherman Act. (Continental T. V, Inc. v. GTE Sylvania, Inc. (1977) 433 U.S. 36, 50 [53 L.Ed.2d 568, 580, 97 S.Ct. 2549]; U.S. v. Socony-Vacuum Oil Co. (1940)310 U.S. 150,223 [84 L.Ed. 1129,1168, 60 S.Ct. 811].) Cases interpreting federal antitrust legislation have been found applicable to interpretation of the Cartwright Act (Mailand v. Burckle (1978) 20 Cal.3d 367, 376 [143 Cal.Rptr. 1, 572 P.2d 1142]) and, as a result, price-fixing has been considered a per se violation of that legislation as well. (Rosack v. Volvo of America Corp. (1982) 131 Cal.App.3d 741, 751-752 [182 Cal.Rptr. 800].) Proof of a violation requires only evidence of a conspiracy among defendants to fix prices; no defense or justification is recognized. (Ibid.)
Most courts hold that when a conspiracy to fix prices has been alleged, common questions predominate over any questions affecting only individual class members. (See, e.g., Classen v. Weller, supra, 145 Cal.App.3d at p. 47 [“the existence of the conspiracy is the predominant common issue determi *1349 native of liability to all class members”]; In re Folding Carton Antitrust Litigation (N.D.Ill. 1977) 75 F.R.D. 727, 733 [“the asserted nationwide price fixing conspiracy presented questions of law and fact common to the class members which predominate over any questions affecting only individual members”]; In re Sugar Industry Antitrust Litigation (E.D.Pa. 1976) 73 F.R.D. 322, 345 [“it is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in its broad outlines, comprises the predominating, unifying common interest”]; State of Minnesota v. United States Steel Corporation (D.Minn. 1968) 44 F.R.D. 559, 572 [“proof of the conspiracy will present the predominant questions of both law and fact”].)
In the instant case the trial court determined that class certification was improper because individual, as opposed to common, questions would predominate with respect to (1) violation or conspiracy, (2) injury or fact of damage, and (3) amount of damage. The trial court found that proof of the conspiracy could not be accomplished by generalized means. The court focused on the diversity of the bottles manufactured by defendants and surmised that “[e]vidence of a conspiracy to allocate sales of jars to food processors such as plaintiff might have no bearing on whether the defendant conspired to allocate sales of wine bottles to vintners.” This finding presupposes each individual class member will present evidence focusing on defendants’ conspiratorial efforts to fix the prices of the particular type of glass container purchased by that class member. It seems more likely that the evidence proving the existence of a conspiracy will concentrate upon the relationship among the alleged conspirators and the scope of the conspiracy without regard to the business relationship between the conspirators and any individual class member.
The central claim of plaintiff’s complaint, made on behalf of herself and the class she seeks to represent, is that defendants conspired “to fix, raise, maintain and stabilize the prices and terms and conditions of sale of glass containers and to allocate among themselves the glass container business in the State of California.” The proof necessary to demonstrate the existence of this alleged conspiracy will require a “common thread of evidence” which “correspond^] to evidence which otherwise would be introduced by absentee class members. [Citations.]” (In re Sugar Industry Antitrust Litigation, supra, 73 F.R.D. at p. 345.) The same conclusion was reached in State of Illinois v. Harper & Row Publishers, Inc. (N.D.Ill. 1969) 301 F.Supp. 484 [6 A.L.R. Fed. 1]: “The single most important issue is whether the defendants’ conspiratorial agreements actually existed. Offering the same facts, all class members will strive to establish a national conspiracy____” (Id., at p. 488; see also Classen v. Weller, supra, 145 Cal.App.3d at p. 47 [“violation as to each class plaintiff will be proved with facts of the same conspiracy”].) The fact that each or any proposed class member did not purchase all products affected
*1350 by the price-fixing conspiracy is irrelevant. “[T]he courts have found it appropriate to look past surface distinctions among the products purchased by class members or the marketing mechanisms involved when allegations of anti-competitive behavior embracing all of the various products and distribution patterns have been credibly pleaded.... Identical products, uniform prices, and unitary distribution patterns are not indispensible for class certification in this context.” (Shelter Realty Corp. v. Allied Maintenance Corp. (S.D.N.Y. 1977) 75 F.R.D. 34, 37, italics added.) The proof needed to demonstrate the conspiracy alleged herein will be the same regardless of whether plaintiff purchased food jars or wine bottles. This issue, without doubt, is common to the class.
Ill
The trial court also determined that plaintiff failed to demonstrate that class-wide proof was available to substantiate her allegation that “plaintiff and the other members of the class paid more for glass containers than they would have paid in the absence of the illegal combination and conspiracy____” If plaintiff proves a violation of the antitrust laws, she still must prove that class members suffered the “fact of damage,” “impact” or “injury” as a consequence of that violation.[7] (Bogosian v. Gulf Oil Corp. (3d Cir. 1977) 561 F.2d 434, 454.) In other words, plaintiff must demonstrate that the class as a whole suffered some loss and that there is a causal relationship between the antitrust violation and that loss. (Ibid.) The trial court concluded that proof of injury in this case could only be accomplished on a highly individualized basis.
Courts have shown no hesitancy in ruling that when a conspiracy to fix prices has been proven and plaintiffs have established they purchased the price-fixed goods or services, the jury can infer plaintiffs were damaged. As the court stated min re Sugar Industry Antitrust Litigation, supra, 73 F.R.D. *1351 at page 347: “It has been held that impact will be presumed once a plaintiff demonstrates the existence of an unlawful conspiracy that had the effect of stabilizing, maintaining or establishing product prices beyond competitive levels. [Citations.]” Addressing itself to this issue, the court in Bogosian v. Gulf Oil Corp., supra, 561 F.2d at page 455 noted: “If, in this case, a nationwide conspiracy is proven, the result of which was to increase prices to a class of plaintiffs beyond the prices which would obtain in a competitive regime, an individual plaintiff could prove fact of damage simply by proving that the free market prices would be lower than the prices paid and that he made some purchases at the higher price.” This principle was echoed in Rosackv. Volvo of America Corp., supra, 131 Cal.App.3d at page 760: “Once a price-fixing conspiracy has been established, it follows that the class has been injured to some extent.” Therefore, “ ‘a jury can infer the fact of injury when a conspiracy to fix prices has been established and plaintiffs have established that they purchased the affected goods or services. This inference eliminates the need for each class member to prove individually the consequences of the defendants’ actions to him or her. Accordingly, impact can be treated as a common question for certification purposes.’ ” (Id., at p. 753, quoting Note, Substantive Policies and Procedural Decision: An Approach to Certifying Rule 23(b)(3) Antitrust Class Actions, supra, 31 Hastings L.J. atp. 503.) It should also be emphasized that courts have applied these principles to markets, such as this one, characterized by individually negotiated prices, varying profit margins, and intense competition. (See, e.g., Rosack v. Volvo of America Corp., supra, 131 Cal.App.3d at pp. 754-757; State of Illinois v. Harper & Roe Publishers, Inc., supra, 301 F.Supp. at pp. 488-489; In re Sugar Industry Antitrust Litigation, supra, 73 F.R.D. at p. 344.)
The result reached by the trial court is inconsistent with the principles outlined above. It appears the trial court dismissed the reasoning in these cases because the proposed class consists of indirect purchasers. Plaintiff and the class can demonstrate they were damaged by the alleged conspiracy only if they can establish that the independent distributors increased prices for glass containers to compensate for defendants’ overcharges. (Union Carbide Corp. v. Superior Court, supra, 36 Cal.3d at p. 23.) In other words, the class must prove on a generalized basis that defendants’ overcharges were “passed-on” to them. (In re Sugar Industry Antitrust Litigation, supra, 73 F.R.D. at p. 346.) Whether the necessity of tracing a price-fixed product through the chain of distribution presents such complex individual issues that injury cannot be proven on a class-wide basis is the issue most vigorously contested herein.
Defendants argue that the considerations which persuaded the court in Hanover Shoe v. United Shoe Mach. (1968) 392 U.S. 481 [20 L.Ed.2d 1231, 88 S.Ct. 2224] to reject a “pass-on defense” should convince this court that *1352 the class proposed herein cannot demonstrate on a generalized basis that illegal overcharges were passed on to its members. Hanover Shoe involved an antitrust treble damage suit against a manufacturer of shoe machinery by one of its customers. The plaintiff claimed defendant had used its monopoly position in the shoe machinery market to impose a lease-only policy upon its customers and to charge them higher prices than they would have paid had defendant sold them the machines in open competition. The defendant contended plaintiff had not suffered “injury” within the meaning of the antitrust laws because it had passed on any overcharge in the form of higher prices for its shoes. The Supreme Court rejected the “pass-on defense,” reasoning there would be insurmountable difficulties in tracing the overcharge through the chain of distribution. (Id., at pp. 492-493 [20 L.Ed.2d at p. 1241].) The trial court, citing Hanover Shoe, supra, at page 493 [20 L.Ed.2d at page 1241], concluded that tracing the illegal overcharge from defendants through the independent distributors to class members would “ ‘require additional long and complicated proceedings involving massive evidence and complicated theories.’ ”
It is important to point out that the facts of Hanover Shoe presented a particularly complicated problem with respect to the pass-on issue. The “product” involved, shoe manufacturing machinery, was not itself resold by plaintiff. In effect, the court was being asked to determine whether plaintiff’s pricing decision for shoes reflected the illegal overcharge for the machinery which was used in their manufacture. Where the product in question is ultimately sold to the consumer, and is largely unchanged in form from the price-fixing manufacturer to the indirect purchaser, assessing whether the manufacturer’s overcharges were passed on is less difficult. Plaintiff and class members herein bought the price-fixed item itself, empty glass containers, from a middleman. The effects of the price-fixing were not obscured by substantially altering or adding to the item received from the manufacturer. Therefore, a class should be able to show on a generalized basis that its members absorbed at least some portion of the alleged overcharges.[8] (See Comment, The California Legislature Steers the Antitrust Cart Right Off the Illinois Brick Road, supra, 11 Pacific L. J. at pp. 129-137 [suggesting workable methods of proving overcharges have been passed on from manufacturers to indirect purchasers].) The insurmountable difficulties found to exist in Hanover Shoe in proving injury are not apparent in the record before us.
As we have seen, courts have assumed consumers were injured when they purchased products in an anticompetitive market, even though the price and terms of sale for the price-fixed product are individually negotiated. (Rosack *1353 v. Volvo of America Corp., supra, 131 Cal.App.3d at pp. 759-760; Hedges Enterprises, Inc. v. Continental Group, supra, 81 F.R.D. at p. 475.) Even if it were shown that certain class members escaped having to pay any of the overcharge due to their superior market positions, the fact remains that in the vast majority of cases at least a portion of the illegal overcharge was passed on by the independent distributors to class members in the form of higher prices.[9] Consequently, we conclude that the issue of injury can be proven on a class-wide basis.
It should also be pointed out that both plaintiff and defendants have invoked the pass-on theory in this case. As we have seen, in order to demonstrate that plaintiff and the proposed class were injured by the alleged conspiracy, plaintiff must demonstrate that defendants’ illegal overcharges were passed on to them in the form of higher prices for glass containers. Defendants have also invoked the pass-on theory but have used it defensively instead of offensively. Defendants argue that the indirect purchasers in this case sustained no injury because they passed on any overcharges to their customers further down the chain of distribution. The trial court was apparently of the view that because California has rejected Illinois Brick Co. v. Illinois, supra, 431 U.S. 720, and has allowed indirect purchasers to maintain a cause of action under the Cartwright Act, the defendant should be able to assert this “pass-on defense.” Whether defendants can bar class certification or negate injury by showing plaintiff and the class “passed on” the overcharge is a question that has not been addressed by any California court, and it would be premature to resolve it at this juncture because we do not have an adequate factual record. However, even if a plaintiff has passed on the entire overcharge, he or she is not per se precluded from otherwise proving injury. For example, even though the entire overcharge has been passed on, the plaintiff may have lost a percentage share of the market or otherwise suffered reduced sales. We cannot foresee and develop every possible scenario which will demonstrate injury; this can be determined only by an adequately developed trial record.
*1354 IV
Finally, the court found that even if the violation and impact issues presented common questions, they would still be overshadowed by the separate individual damage issues if the plaintiff class prevails on the liability issue. It has been repeatedly held, however, that the presence of individual damage issues cannot bar certification. As the court stated in Samuel v. University of Pittsburgh (3d Cir. 1976) 538 F.2d 991: “In almost every class action, factual determinations [of damages]... to individual class members must be made. [Citations.] Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.” (Id., at p. 995, fn. omitted; see also Anthony v. General Motors Corp. (1973) 33 Cal.App.3d 699, 703 [109 Cal.Rptr. 254]; Bogosian v. Gulf Oil Corp., supra, 561 F.2d at p. 456; Hedges Enterprises, Inc. v. Continental Group, supra, 81 F.R.D. at pp. 475-476; In re Folding Carton Antitrust Litigation, supra, 75 F.R.D. at pp. 734-735; In re Sugar Industry Antitrust Litigation, supra, 73 F.R.D. at pp. 350-355.)
The problems of ascertaining individual damages in this case should not be overwhelming. The parties to this action are business entities which presumably kept records. The size of the class is manageable—plaintiff estimates there are several thousand class members who purchased glass containers from approximately 10 independent distributors. The court in Classen v. Weller, supra, 145 Cal.App.3d 27, observed: “[I]n most circumstances a court can devise remedial procedures which channel the individual [damage] determinations that need to be made through existing forums.” (Id., at p. 46.) A bifurcated trial, subclasses, and other methods may be employed to simplify the proceedings.
At this stage we are not prepared to state which method would be appropriate to resolve the individual damage questions presented. This question need not be resolved until the class-wide issues have been determined. As the court explained in Rosack v. Volvo of America Corp., supra, 131 Cal.App.3d at pages 762-763: “Speculative problems with regard to computation of damages should not have been fatal to class certification here. Any one of a number of procedures were available which would have allowed this action to proceed and which would have postponed a specific determination at this early stage of the precise formula for calculating individual damages.”
V
In conclusion, the trial court here focused on the individual interests of the various potential class members. These questions naturally involve such *1355 issues as the different types of glass containers involved in the alleged conspiracy, the different pricing policies of the independent distributors, and the difficulties in proving the precise amount of overcharge that was passed on to each class member. The inevitable result of the trial court’s reasoning is that any class of indirect purchasers alleging a conspiracy by a large group of defendants will be deemed to have presented a predominant core of individual questions. This approach focuses on the individuality of each plaintiff rather than on the common issues facing the plaintiff class. The cases demonstrate that none of these individual issues prevents certification, particularly at this stage of the litigation. The existence, implementation and effect of the alleged conspiracy is the common, predominate issue central to this case and it can be tried on a class-wide basis.
The need for courts to adopt innovative methods for handling class-wide issues is amplified by the growing number of plaintiffs denied access to federal remedies who will sue under the Cartwright Act in our state courts. It can be presumed that a great number of these plaintiffs will be indirect purchasers. There are several reasons why these plaintiffs need access to the class-wide remedy. “A powerful supplier may gouge individual customers of minor amounts which, when totalled, comprise staggering sums. Absent the risk of class proceedings, the potential defendant has little to fear as there is no economically viable remedy for individual plaintiffs. Similarly, a single purchaser may be reluctant to risk the wrath of a dominant supplier. In these instances, class treatment allows buyers to combine their market power to prevent retaliation for enforcing their rights. Denial of class status in such situations may leave plaintiffs without a remedy and defendants with unlawful gains, secure in the knowledge of the low risk of government prosecution.” (Note, Substantive Policies and Procedural Decisions: An Approach to Certifying Rule 23(b)(3) Antitrust Class Actions, supra, 31 Hastings L.J. at pp. 494-495, fns. omitted.) Under these circumstances, courts should avoid interpreting procedural requirements in such a way as “would thwart the legislative intent ... to retain the availability of indirect-purchaser suits as a viable and effective means of enforcing California’s antitrust laws.” (Union Carbide Corp. v. Superior Court, supra, 36 Cal.3d at p. 21.)
The order denying class certification is reversed. The matter is remanded with directions to enter a new order granting class certification.
Low, P. J., and King, J., concurred.
A petition for a rehearing was denied March 30, 1987, and respondents’ petition for review by the Supreme Court was denied July 2, 1987. Lucas, C. J. and Panelli, J., were of the opinion that the petition should be granted.

 Nothing in the complaint suggests that the independent distributors conspired with defendants to fix prices. In fact, a parallel federal action is proceeding in which direct purchasers from defendants are seeking relief under federal antitrust laws for the same conduct alleged herein. (Superior Beverage Co. Inc. v. Owens-Illinois, Inc., et al. (N.D. Ill.) Civ. No. 83 512 and related cases.)

In 1978, the California Legislature added the following paragraph to section 16750, subdivision (a) of the Business and Professions Code: “Such action may be brought by any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant.” (Italics added.)

See footnote, ante, page 1341.

To meet the requirements for a class under rule 23 of the Federal Rules of Civil Procedure plaintiff must show numerosity of the class, typicality of the named plaintiffs claim, and adequacy of representation. In addition, plaintiff must show that the common questions of law or fact predominate over questions affecting only individual class members and that the class action is the fairest and most efficient means of resolving the dispute.

Violations of the Cartwright Act are also unlawful business practices under the unfair competition statutes. (See People v. National Association of Realtors (1981) 120 Cal.App.3d 459, 473-476 [174 Cal.Rptr. 728, 22 A.L.R.4th 79].)

Courts and commentators have taken great pains to point out that injury or “fact of damage,” which must be proven on a class-wide basis, is separate and distinct from the issue of actual damages. As was pointed out in Zenith Corp. v. Hazeltine (1969) 395 U.S. 100,114, footnote 9 [23 L.Ed.2d 129, 143, 89 S.Ct. 1562], an antitrust plaintiffs “burden of proving the fact of damage ... is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage.” (See e.g., Rosack v. Volvo of America Corp., supra, 131 Cal.App.3d at p. 757; Hedges Enterprises, Inc. v. Continental Group (E.D.Pa. 1979) 81 F.R.D. 461, 474-475; Note, Substantive Policies and Procedural Decisions: An Approach to Certifyinq Rule 23(b)(3) Antitrust Class Actions (1979) 31 Hastings L.J. 491, 502-503.) “Fact of damage pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relate to the appropriate measure of individual relief.” (Martino v. McDonald’s System, Inc. (N.D.Ill.1980) 86 F.R.D. 145,147.) However, class treatment of fact of damage presumes the ability to prove the class as a whole was injured without becoming enmeshed in individual questions of actual damage. (Ibid.)

Plaintiff substantiates this proposition by stating that “each distributor whose deposition has been taken testified that price increases by the defendants/manufacturers were completely passed on to plaintiff and the members of the class.”

We note that class actions were frequently allowed prior to the United States Supreme Court’s decision in Illinois Brick Co. v. Illinois, supra, 431 U.S. 720, even though the class members were indirect purchasers and were injured in different amounts. (See, e.g.. In re Antibiotic Antitrust Actions (S.D.N.Y. 1971) 333 F.Supp. 278; In re Sugar Industry Antitrust Litigation, supra, 73 F.R.D. 322; In re Master Key Antitrust Litigation (D.Conn. 1975) 70 F.R.D. 23; In re Ampicillin Antitrust Litigation (D.D.C. 1972) 55 F.R.D. 269; City of Philadelphia v. American Oil Company (D.NJ. 1971) 53 F.R.D. 45; see generally In re Western Liquid Asphalt Cases (9th Cir. 1973) 487 F.2d 191; State of West Virginia v.Chas. Pfizer & Co. (2d Cir. 1971) 440 F.2d 1079; Karseal Corporation v. Richfield Oil Corporation (9th Cir. 1955) 221 F.2d 358.)